IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

IN RE:

FRANCIS CLIFFORD TUCKER,            Bankruptcy No. 09-914

    Debtor.
_____

FRANCIS CLIFFORD TUCKER,

    Debtor - Appellant,

v.                                                   Civil Action No. 5:12CV119
                                                          (STAMP)
MLH INVESTMENTS, LLC and
D. WILLIAM DAVIS, Chapter 7,
Trustee,

    Creditors - Appellees.

**MEMORANDUM OPINION AFFIRMING ORDER AND**
**MEMORANDUM OPINION OF THE BANKRUPTCY COURT**

I. Procedural History

Ohio Valley Amusement Company, Alexas Intertainment, LLC, and Allan Hart filed an involuntary Chapter 7 petition against the appellant/debtor, Francis C. Tucker ("Tucker"). Tucker filed an answer contesting the petition and two motions to dismiss. The United States Bankruptcy Court for the Northern District of West Virginia denied the motions to dismiss and held a trial on the contested petition. The bankruptcy court found that the petitioning creditors established grounds for relief under 11 U.S.C. § 303. Tucker appealed to this Court. This Court affirmed the bankruptcy court's order.

The case then continued in the bankruptcy court and the trustee of the estate of the appellant, D. William Davis ("trustee"), filed a motion to sell Tucker's shares of stock in Mound City, Inc. ("Mound City") to the other appellee, MLH Investments, LLC ("MLH"), for the sum of $25,000.00. In addition to the motion, the trustee also issued a notice of private sale which required all upset bidders to secure their bids by depositing the amount of their bids in the form of a cashier's check or certified bank check with the trustee to be held in trust with the trustee pending court approval.

Tucker then filed an objection to the proposed sale, followed by a supplement to his objection, arguing that (1) MLH was not a disinterested party and thus not a good faith purchaser and (2) the trustee was not receiving fair value for the stock of Mound City. The bankruptcy court then held a telephonic hearing to consider the trustee's motion and the objections of Tucker. The bankruptcy court then ordered the trustee to conduct an investigation of the assets and debts of Mound City in order to determine the fair value of the Mound City stock. Prior to the final hearing on the trustee's motion, Tucker filed a response suggesting that at least three persons were interested in purchasing the Mound City stock for $30,000.00. However, at the final hearing, the trustee reported that none of the potential purchasers had contacted him prior to the hearing as required by the notice of private sale he had issued. Thus, the bankruptcy court found that the sale to MLH

2

met the "sound business judgment test" of the court, that MLH was a good faith purchaser pursuant to 11 U.S.C. § 363(m), and that the sale was the best option for Tucker's bankruptcy estate. The bankruptcy court therefore entered an order authorizing the trustee to sell Tucker's stock in Mound City to MLH for the sum of $25,000.00.

Thereafter, Tucker filed a notice of appeal of the bankruptcy court's order with this Court. However, the notice was filed a day late. MLH filed a motion to dismiss and the parties fully briefed the motion. After the motion was fully briefed, this Court remanded the motion to dismiss to the bankruptcy court. The bankruptcy court denied the motion to dismiss because of a technical error that had occurred with the Court's electronic filing system.

In addition to the briefing for the motion to dismiss, the parties filed their briefs pursuant to the appeal before this Court remanded to the bankruptcy court. However, Tucker's counsel withdrew prior to the response to the appeal being filed by MLH and no reply was filed by Tucker who was then proceeding as a pro se[1] appellant. After the case was returned to this Court by the bankruptcy court, this Court entered a Roseboro[2] notice notifying

---

[1] "Pro se" describes a person who represents himself in a court proceeding without the assistance of a lawyer. Black's Law Dictionary 1341 (9th ed. 2009).

[2] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a pro se plaintiff of his right to file material in response to a motion for summary judgment).

3

Tucker of his right to respond to MLH's response and directing Tucker to file a reply by February 15, 2013.  See ECF Nos. 14 and 15 (return receipt from appellant).  Again, no reply was filed.

For the reasons set forth below, this Court affirms the order of the bankruptcy court approving and confirming the sale of 500 shares of stock of Mound City to MLH.

## II. Jurisdiction and Standard of Review

This Court has jurisdiction over this bankruptcy appeal pursuant to 28 U.S.C. § 158(a) and Federal Rule of Bankruptcy Procedure 8002.  This Court reviews the bankruptcy court's conclusions of law under a de novo standard of review and reviews findings of fact by the bankruptcy court for clear error.  See Federal Rule of Bankruptcy Procedure 8013; In re NVR, LP, 189 F.3d 442, 448 (4th Cir. 1999); Educ. Credit Mgmt. Corp. v. Kirkland, 600 F.3d 310, 314 (4th Cir. 2010).

## III. Discussion

In his memorandum of law in support of appeal, Tucker focuses on two arguments previously raised before the bankruptcy court: (1) MLH was not a good faith purchaser and (2) the purchase price of $25,000.00 for 500 shares of Mound City was not a sufficient value. Tucker also raises a new contention in his appeal, arguing that MLH did not meet the burden of proof required for proving it was a good faith purchaser.  Before this Court addresses each of the appellant's arguments in turn, it must consider MLH's assertion that this appeal falls within the rule of "statutory mootness"

under 11 U.S.C. § 363(m). <u>In re Rare Earth Minerals</u>, 445 F.3d 349, 363 (4th Cir. 2006).

A.  <u>Title 11, United States Code, Section 363(m)</u>

In MLH's supporting brief, it argues that § 363 applies to this case because the appellant has not obtained a stay of the sale of the Mound City shares. That section states:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). The bankruptcy court found that MLH qualified as a good faith purchaser under this section. Further, the appellant has not sought a stay of the sale of the Mound City shares pending this appeal. "Where a sale of a bankrupt's assets has not been stayed, an appeal challenging the sale's validity is moot because 'the court has no remedy that it can fashion even if it would have determined the issues differently.'" <u>In re Rare Minerals</u>, 445 F.3d at 363 (citing <u>Anheuser-Busch, Inc. v. Miller (In re Stadium Mgmt. Corp.)</u>, 895 F.2d 845, 847 (1st Cir. 1990)).

In this case, the bankruptcy court approved the sale of the Mound City shares under 11 U.S.C. § 363(b), sale of property of a debtor's estate after notice and a hearing. Further, the appellant has not attempted to stay the sale of the shares during the pendency of this appeal. Thus, the appellant's appeal is moot unless MLH was not a good faith purchaser.

5

B. <u>MLH's Status as a Good Faith Purchaser</u>

The appellant's main contention with the bankruptcy court order is that the court found that MLH was a good faith purchaser. Because this case falls under § 363(m), if MLH is a good faith purchaser, the appellant's appeal is moot. For the following reasons, this Court finds that MLH was a good faith purchaser and this appeal is moot.

A good faith purchaser is "one who purchases the assets for value, in good faith, and without notice of adverse claims." <u>Willemain v. Kivitz</u>, 764 F.2d 1019, 1023 (1985) (citations omitted). The first element, value, is traditionally defined as "75% of the appraised value of the asset." <u>Id.</u> The second element, good faith, is typically only destroyed if the sale involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." <u>Id.</u> (citing <u>In re Rock Indus. Mach. Corp.</u>, 572 F.2d 1195, 1198 (7th Cir. 1978)). Finally, notice of adverse claims is not proven simply by the buyer's knowledge of the pendency of the debtor's appeal. <u>Id.</u>

1. <u>Value</u>

First, as to value, the appellant argues that the purchase price of $25,000.00 for 500 shares of Mound City was not a sufficient sale price. Further, the appellant contends that Mound City owns two judgments against Ohio Valley Amusements for the amounts of $547,000.00 and $250,000.00. Thus, the appellant

asserts that the sale price of $25,000.00 that the bankruptcy court allowed was not sufficient.

The bankruptcy court, however, required the trustee to conduct an investigation of the assets and debts of Mound City when the same arguments were raised by the appellant in objection to the trustee's motion to sell. The trustee filed an affidavit reflecting the results of his investigation which purported that the fair value of the Mound City shares was $25,000.00. The bankruptcy court found that this was a fair value for the shares. Further, although not reasserted by the appellant, the bankruptcy court also found that the appellant's suggestion that three other persons were interested in purchasing the stock at $30,000.00 had not panned out by the time of the hearing. No other purchaser, other than MLH contacted the trustee.

There is no clear "appraised value" in this case. This Court must use the findings of the trustee, the bankruptcy court, and the appellant's assertions as to the judgments against Ohio Valley Amusements. Thus, the appraised value could be approximately $800,000.00 if the appellant's valuation is used. Again, the default rule is that the sale price, in order to fulfill the value component, should be "75% of the appraised value of the asset." Willemain, 764 F.2d at 1023. A bankruptcy court, however, can discredit and ignore an appraisal if it is proper to do so. Id. Further, "the lack of willing buyers reduces the value of a property" and the United States Court of Appeals for the Fourth

Circuit has found that this is also a valid consideration for why the value may be lower than expected by the debtor. In re Marjec, Inc., 833 F.2d 1005, 1005 (4th Cir. 1987). In this case, the bankruptcy court relied on the value given by the trustee and also on the only bid that the trustee was provided. The trustee had given notice of the sale, and was only contacted by MLH. Further, the appellant's objection that there were three other purchasers proved without merit in that no other contact was made with the trustee concerning the sale of the shares. Finally, even if the other bidders had materialized, their bids would have only been for $30,000.00, according to the appellant. Thus, $25,000.00 would be sufficient under the 75% default rule. Accordingly, this Court agrees with the bankruptcy court that MLH did purchase the assets for value.

2. Good Faith

In analyzing Tucker's claim that MLH was not a good faith purchaser, the bankruptcy court found that there was no evidence of fraud or collusion between the trustee and MLH. Further, the bankruptcy court noted that there was no evidence that any other bidders had been taken advantage of by the trustee nor was there evidence of unclean hands by the trustee or MLH. In addition, the bankruptcy court held that the purchaser of a debtor's assets does not need to be a disinterested person. Finally, the bankruptcy court found that Tucker did not have unclean hands in this matter

8

because another creditor was successful in unwinding the transfer of the stock of Mound City from Francis Tucker to Helen Tucker.

On appeal, Tucker again asserts that MLH was not a good faith purchaser because it was aware of litigation involving Tucker in this Court. In that litigation, Mound City is suing Frank Barker who is the owner of MLH. In a new argument raised by the appellant, Tucker relies on 11 U.S.C. § 363(p)(1), which he contends places the burden of proof in arguing good faith on "the entity asserting an interest in property . . . ." Tucker argues that no testimony or evidence was provided by MLH surrounding the proposed sale. Thus, Tucker asserts that the bankruptcy court incorrectly relied on the trustee's affidavit and in not requiring the same from MLH.

MLH argues that Tucker's reliance on § 363(p)(2) is misplaced. According to MLH, § 363(p)(2) only applies to cases in which a creditor has a lien on assets which the trustee proposes to use, sell or lease pursuant to 11 U.S.C. § 363(e).

Although the appellant argues otherwise, this Court finds that the language "entity asserting an interest in property" refers to a creditor or lien holder. Several cases, too numerous to account for fully in this order, apply this section to creditors or lien holders, not to buyers of property in a sale initiated by the trustee. See VanCura v. Hanrahan (In re Meill), 441 B.R. 610, 613-14 (8th Cir. BAP 2010) (pursuant to § 363(p)(2), the burden is on the holder of a vendor's lien who objected to a § 363 sale);

9

Morris v. Kasparek (In re Kasparek), 426 B.R. 332, 340 (10th Cir. BAP 2010) ("As the party contesting record title and asserting full equitable title to the Property, [the non-debtor] had the burden of proving the validity and extent of his equitable interest."); In re Premier Golf Properties, LP, 477 B.R. 767, 772 (B.A.P. 9th Cir. 2012) (bank/creditor "has the burden of establishing the existence and the extent of its interest in the property it claims as cash collateral"); Kiser v. Russell Cty., Va. (In re Kiser), 344 B.R. 432, 439 (Bankr. W.D. Va. 2004) ("Pursuant to Bankruptcy Code § 363(p)(2) the burden of proof falls on the party asserting an interest in property. Because [creditor] is asserting a lien on the [debtors'] property it has the burden of proving to what property its lien attaches."). Thus, it appears that the standard bankruptcy practice is to apply this burden of proof to cases in which there is an intervening creditor or lien holder.

Consequently, the burden in this case would have been on the trustee and the debtor. When deciding whether to approve a § 363 sale, a court must "'expressly find from the evidence presented before [it] at the hearing a good business reason to grant such an application [to sell].'" Stephens Indus., Inc. v. McClung, 789 F.2d 386, 389 (6th Cir.) (quoting Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983)). The party seeking approval of the sale bears the burden of demonstrating that there is a sound business purpose for the sale. See Lionel Corp., 722 F.2d at 1071. The objecting party must

10

"produce some evidence respecting its objections." Id. Thus, the trustee has the burden of demonstrating that there is a sound business purpose for the sale, and the debtor, Tucker, had the burden to produce evidence respecting his objection to the sale of the Mound City shares.

The bankruptcy court found that this transaction met the sound business judgment test based on the affidavit and evidence given by the trustee. Further, the bankruptcy court found that Tucker's objections were unfounded and that none of the exceptional factors that would require a finding of bad faith on the part of MLH were present. Thus, MLH had not taken part in "fraud, collusion between the purchaser and other bidders or the trustee, or [attempted] to take grossly unfair advantage of other bidders." Willemain, 764 F.2d at 1023. This Court agrees and finds that based on the information given by the trustee, it did meet its burden of showing that MLH was purchasing the Mound City shares in good faith.

3. Notice of Adverse Claims

The appellant's final argument is that MLH does not qualify as a good faith purchaser because it was aware of Tucker's claims against MLH's owner, Frank Barker. The Fourth Circuit has held, however, that a prior relationship with the debtor does not preclude a purchaser from qualifying for good faith status. In re Marjec, Inc., 833 F.2d 1005, 1005 (4th Cir. 1987). In that case, the purchaser had previously entered into negotiations with the debtor to sell the land at issue in the action, but the deal had

11

fallen through.  Id.  The court noted that the debtor was unable to show what information the purchaser had gained from that transaction that could have been used to gain an improper advantage.  Id.  The court therefore found that the purchaser had entered the agreement with the trustee in good faith under the notice prong of the good faith purchaser test.  Id.

The bankruptcy court in this action also found that although MLH was not a disinterested party, it was still a good faith purchaser.  Although MLH's owner is involved in litigation with Tucker, MLH itself is not.  Tucker has not provided any evidence that MLH has gained an unfair advantage over other bidders, the trustee, or Tucker, through the litigation.  Thus, this Court agrees with the bankruptcy court that MLH also qualifies as a good faith purchaser under this final prong.

For the reasons stated above, this Court finds that MLH was a good faith purchaser and that Tucker's appeal is therefore moot under 11 U.S.C. § 363(m).

## IV.  Conclusion

For the reasons set forth above, the bankruptcy court's order and memorandum opinion granting the petitioner's motion to sell five hundred (500) shares of Mound City to the appellant is AFFIRMED.  It is further ORDERED that this appeal should be and hereby is DISMISSED and STRICKEN from the active docket of this Court.

The Clerk is directed to transmit copies of this memorandum opinion to the pro se appellant, Frances Clifford Tucker, by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is directed to enter judgment on this matter.

DATED: October 17, 2013

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE